1
2
3
4                    UNITED STATES DISTRICT COURT
5                  NORTHERN DISTRICT OF CALIFORNIA
6
7    JEREMY RYAN TERRELL,                Case No. 25-cv-04341-LJC
                    Plaintiff,
8
9         v.                            GRANTING IN PART AND DENYING
                                        IN PART DEFENDANTS' MOTION TO
10   CITY OF BRENTWOOD, et al.,          DISMISS FIRST AMENDED
                                        COMPLAINT; DENYING AS MOOT
                    Defendants.          MOTION TO DISMISS COMPLAINT;
11                                       DENYING REQUEST FOR ENTRY OF
                                        DEFAULT
12
                                        Re: Dkt. Nos. 6, 11, 15
13
14
15        Plaintiff Jeremy Terrell sued the City of Brentwood (the City), Officer Dustin Greene,
16   Officer Doug Morrison, and former Officer Ryan Rezentes (the officer Defendants) (collectively,
17   Defendants) in Contra Costa Superior Court, alleging that Defendants violated his civil rights
18   during and after the officer Defendants' entry into Plaintiff's home in 2019.  ECF No. 1-1.
19   Defendants removed the case to the Northern District of California and moved to dismiss.  ECF
20   Nos. 1, 6.  Plaintiff amended his complaint, ECF No. 9, and Defendants renewed their motion to
21   dismiss, ECF No. 11.  Defendants' motion to dismiss Plaintiff's original complaint, ECF No. 6, is
22   denied as moot.  For the following reasons, Defendants' motion to dismiss Plaintiff's First
23   Amended Complaint (FAC), ECF No. 11, is denied in part and granted in part.  Defendants'
24   request to strike portions of Plaintiff's FAC is denied.  Plaintiff's request for entry of default
25   against the officer Defendants, ECF No. 15, is denied.
26
27
28

United States District Court
Northern District of California

## I.    FACTUAL BACKGROUND[1]

Plaintiff was arrested for marijuana cultivation in 2010 and was subsequently held in federal custody for two years.  FAC ¶ 5.  Following his release from custody in 2015, he was placed on five years of federal supervised release, which was terminated early in September 2017 due to his "exemplary conduct and successful reintegration."  *Id.*  During and after his supervised release, Plaintiff lived with his parents in Brentwood, California, and worked as a painter.  *Id.*  In April 2019, he was living with his parents, working full time, and saving to buy a house.  *Id.*

Officers Greene, Morrison, and Rezentes of the Brentwood Police Department were on duty early in the morning of April 16, 2019.  *See* FAC at 29.  They received a report of a burglary at a gas station convenience store and began searching the surrounding area.  *Id.*  Officer Morrison observed a white man in a t-shirt running down a street.  The police dispatcher told the officers that Plaintiff, who lived with his parents nearby, was on federal probation.  *Id.*  The dispatcher's description of Plaintiff matched the physical characteristics of the man seen running down the street.  *Id.*  The officers approached Plaintiff's parents' home at approximately 2:00 am with a police dog, Marco.  *Id.* ¶ 1.  They left for several minutes and then returned.  Officer Rezentes knocked on the door, Plaintiff's elderly father answered, and the officers asked where Plaintiff was.  Marco was at the door with the officer Defendants, barking.  *Id.*  Plaintiff's father turned to call to Plaintiff (who was sleeping upstairs), and the officers and dog entered the home.  *Id.*  The officers "proceeded upstairs to Plaintiff's locked bedroom, where they ordered him—while nude and disoriented—to open the locked door at gunpoint, handcuffed him, and conducted a search of the room with the K-9."  *Id.*

Plaintiff's mother and sister were also present inside the home.  *Id.* ¶¶ 3-4. Plaintiff's mother initially hid in a closet when the officers entered because she did not know who they were.  *Id.* ¶ 3.  She and Plaintiff's sister were then forced to wait downstairs while the officers searched Plaintiff's room.  *Id.* ¶ 4.

The officers received updated information from the dispatcher and learned that Plaintiff did

---

[1] As the plaintiff's factual allegations are taken as true at the motion to dismiss stage, this summary treats the facts alleged in the First Amended Complaint as true.

not match the description of the burglary suspect. *See id.* at 31. They released Plaintiff, apologized to his family, and left the home. *Id.* ¶ 2.

Plaintiff alleges that the April 2019 police entry "severely impacted [his] mental health and ability to function." *Id.* ¶ 5. He lost his job in May 2019, was hospitalized in November 2019 following a psychological crisis, and entered an inpatient psychiatric treatment program in January 2020, where he was diagnosed with post-traumatic stress disorder, anxiety, dissociation, and depression. *Id.* His "psychological impairments persisted for over five years," and, during this period, he experienced "trauma-related episodes, including flashbacks, panic, sleep disturbances, and dissociation," and was hypervigilant and unable to "sleep or feel safe in his own home." *Id.* ¶¶ 10, 11. "His mental state rendered him unable to consult legal counsel or initiate litigation" until December 2024. *Id.* ¶ 12. Plaintiff alleges that it took "years of emotional rehabilitation" for him to reach "a point of psychological stability sufficient to" review the police report and a neighbor's surveillance footage showing the officers' entry and "understand the constitutional violations that had occurred." *Id.* ¶¶ 6.

After the April 2019 incident, Plaintiff's father requested a copy of the incident report pursuant to the California Public Records Act. *Id.* ¶ 38. Thomas Hansen, then Chief of the Brentwood Police Department, "denied the request until legally compelled to disclose the report." *Id.* In April 2025, Plaintiff submitted a public records request "seeking records of sustained misconduct involving" each of the officer Defendants. *Id.* ¶ 39. "Records Supervisor Sonia Cardinale, acting on behalf of Chief Tim Herbert" informed Plaintiff that the department had no responsive records for Officer Rezentes. *Id.* ¶ 40. This was "knowingly false," as the City had records "relating to at least two violent K-9 deployments" involving Officer Rezentes. *Id.* Twelve days later, the City disclosed limited records and photographs regarding one of the K-9 deployments, "alongside an excessive volume of irrelevant material." *Id.*

## II.    PROCEDURAL BACKGROUND

Plaintiff sued the City of Brentwood and Officers Greene, Morrison, and Rezentes in Contra Costa Superior Court on April 9, 2025, alleging that Defendants violated his civil rights

United States District Court
Northern District of California

under the U.S. and California Constitution.[2]  *See* ECF No. 1-1.  Plaintiff served Defendants on April 21, 2025, and Defendants removed the action to federal court one month later on the basis of federal question jurisdiction.  *See* ECF No. 1.  Defendants then moved to dismiss Plaintiff's claims, arguing that Plaintiff's state law claims were barred because he had not first presented them as required by the California Government Claims Act and his federal claims were time-barred.  ECF No. 6.

Plaintiff timely amended his complaint.  *See* FAC.  His First Amended Complaint alleges that the officer Defendants' April 2019 entry and conduct during the entry violated Plaintiff's civil rights.  Plaintiff asserts that the officers entered his family's home "without a warrant, without consent, without probable cause, and without exigent circumstance" or any other lawful justification and used excessive force against him when they pointed their firearms at Plaintiff and handcuffed him while he was naked with a police dog present.  *Id.* ¶¶ 19, 24.  Plaintiff brings three claims against the officer Defendants: a 42 U.S.C. Section 1983 claim alleging that the officers violated his Fourth and Fourteenth Amendment rights (Count One); a claim under California's Bane Act (Count Three); and a California common law trespass claim (Count Four).

Plaintiff also asserts a municipal liability claim against the City pursuant to Section 1983 (Count Two).  He alleges that the officers' conduct during the April 2019 incident was consistent with the City's "policy and longstanding custom of permitting warrantless entries and excessive force in non-emergency situations, frequently based on unsupported or demonstrably false information provided by dispatch or officers."  *Id.* ¶ 34.  He contends that the City failed to properly discipline officers "with known misconduct histories," which "enabled the unconstitutional entry into Plaintiff's home and the excessive, degrading detention that followed."  *Id.* ¶¶ 41-42.  He further alleges that the City had a "municipal practice of obstructing access to police misconduct records" which was "ratified by municipal leadership."  *Id.* ¶¶ 38, 40.

Defendants renewed their motion to dismiss, in large part reiterating their previous

---

[2] Plaintiff separately sued the City of Brentwood in Contra Costa Superior Court on April 8, 2025 (Case No. C25-00984) regarding the April 2019 incident.  The City was never served and Plaintiff voluntarily dismissed that lawsuit in May 2025.

1    arguments regarding the statute of limitations and government claims requirement.  ECF No. 11.

2    They also contend that Plaintiff's Fourteenth Amendment claim, *Monell* liability claim, and Bane

3    Act claim otherwise fail as a matter of law.  *Id.* at 15-18.  Defendants request that the Court strike

4    portions of Plaintiff's FAC (*id.* at 19) and that the Court consolidate Plaintiff's lawsuit filed in

5    Contra Costa Superior Court against the City with the instant action (*id.* at 18-19).

6        After the motion to dismiss was fully briefed, Plaintiff filed a request for entry of default

7    against the officer Defendants, arguing that they had not defended themselves in this lawsuit.  ECF

8    No. 15.  Defendants opposed his request for entry of default.  ECF No. 16.

9    **III.    PLAINTIFF'S REQUEST FOR ENTRY OF DEFAULT**

10       Plaintiff requests that default be entered against the officer Defendants pursuant to Federal

11   Rule of Civil Procedure 55(a).  ECF No. 15 at 2.  Rule 55(a) provides, "When a party against

12   whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that

13   failure is shown by affidavit or otherwise, the clerk must enter the party's default."  To date, the

14   Clerk of Court has not granted or denied Plaintiff's request for entry of default.

15       Plaintiff argues that the motions to dismiss at ECF Nos. 6 and 11 were filed only by the

16   City and, as the officer Defendants "have not filed an answer, Rule 12 motion, notice of joinder, or

17   any responsive pleading," entry of default against them is warranted.  ECF No. 15 at 2.  To

18   Plaintiff's point, the captions of the motions to dismiss identify the motions as "DEFENDANT

19   CITY OF BRENTWOOD'S NOTICE OF MOTION AND MOTION TO DISMISS" and the

20   notices of motion state that "the CITY OF BRENTWOOD defendants ('Defendants') ('City') will,

21   and hereby do, move to dismiss Plaintiff's" Complaint and FAC.  ECF Nos. 6 at 1, 2; 11 at 1, 2.

22   Based on this language alone, there is no indication that the motions were filed by all Defendants.

23   But the docket reflects that the motions to dismiss and Defendants' reply in support of their

24   motion to dismiss the FAC were filed by "Dustin Greene, Ryan Rezentes, Douglas Morrison,

25   [and] City of Brentwood."  ECF Nos. 6, 11, 14.  All Defendants are represented by the same

26   counsel, *see* ECF No. 11 at 1, and the notices of motion and motions are submitted by the

27   "Attorneys for Defendants CITY OF BRENTWOOD, DUSTIN GREENE, RYAN REZENTES,

28   and DOUGLAS MORRISON."  *Id.* at 2, 22; ECF No. 6 at 2, 11.  And, as Defendants argue, the

United States District Court
Northern District of California

motions to dismiss "identify defects applicable to all claims and all defendants. The same limitations bar the claims against the officers, and the FAC contains no facts or theories that would justify separate treatment." ECF No. 14 at 4. The Court accordingly construes the motions to dismiss as being filed by all Defendants.

While the motions to dismiss could have been drafted to more clearly reflect that they were filed by all Defendants, not just the City, the officer Defendants have otherwise "indicated" that they "intend to" participate in this lawsuit and "defend against the allegations therein." *Johnson v. Chudy*, No. 14-cv-04958, 2021 WL 6427918, at *1 (N.D. Cal. Dec. 28, 2021). Defendants' counsel added the officer Defendants to the case at ECF No. 3. All Defendants consented to magistrate judge jurisdiction.[3] ECF No. 7. The Opposition to Plaintiff's request for entry of default was unequivocally filed by all Defendants. ECF No. 16.

Moreover, if default was entered against the officer Defendants, it would ultimately be set aside. *See J.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-cv-00656, 2025 WL 524642, at *2 (N.D. Cal. Feb. 18, 2025) ("In similar circumstances, other district courts in this circuit have applied Rule 55's good cause standard to determine whether any default ultimately would be set aside, and thus whether default should be entered at all."); *Hankerson v. Nationwide Cap. Servs.*, No. 21-cv-1229, 2022 WL 1432441, at *1 (D. Nev. Apr. 11, 2022). "The court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). "To determine if there is good cause" to set aside an entry of default, courts consider "(1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether it had no meritorious defense; or (3) whether reopening the default judgment would prejudice the other party." *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F. 3d 1085, 1091 (9th Cir. 2010) (citation modified). The Court has "especially broad" discretion to set aside entries of default, and "judgment by default is a drastic step appropriate only in extreme circumstances." *Brady v. United States*, 211 F.3d 499, 504 (9th Cir. 2000) (quotations omitted); *Falk v. Allen*, 739 F.2d 461,

---

[3] Although a notice was issued on June 17, 2025, directing Defendants to file their consent or declination form, this was in error as all parties had consented to magistrate judge jurisdiction by that date. ECF Nos. 7, 10.

United States District Court
Northern District of California

463 (9th Cir. 1984).  Were default entered against the officer Defendants, there would be good

cause to set it aside as 1) the default would have been the result of inartful drafting by counsel

rather than culpable conduct of the officers, 2) Defendants have raised arguments that may prove

meritorious, and 3) setting aside the default judgment would not prejudice Plaintiff.  *See Mesle*,

615 F.3d at 1091.  Plaintiff's request for entry of default against the officer Defendants is

accordingly denied.

## IV.    DEFENDANTS' MOTION TO STRIKE AND REQUEST FOR CONSOLIDATION

Defendants request that the Court strike portions of Plaintiff's FAC pursuant to Federal

Rule of Civil Procedure 12(f).  ECF No. 11 at 19.  Rule 12(f) permits courts to strike "any

redundant, immaterial, impertinent, or scandalous matter" from pleadings.  Defendants seek to

strike paragraphs 93-97 and 102[4] of the FAC.  ECF No. 11 at 19.  Paragraphs 93-97 pertain to

Defendants' removal of this case to federal court, which Plaintiff characterizes as "improper last

minute forum shopping."  FAC ¶ 97.  At paragraph 102, Plaintiff alleges:

> The defense's posture amounts to: "Yes, this was unconstitutional—
> but we should escape liability because the victim wasn't well enough
> to sue us in time."  That is not justice….Such conduct undermines
> public trust and reinforces the very sense of powerlessness that
> victims of unlawful police action often feel.

Defendants argue that these paragraphs must be stricken because they have no bearing on

Plaintiff's claims and serve "only to inflame, distract, and prejudice."  ECF No. 11 at 19.  Plaintiff

argues that these paragraphs "are relevant to issues of credibility, institutional conduct, and

potential *Monell* liability."  ECF No. 13 at 8 (italics added).

Motions to strike are disfavored, *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d

1048, 1057 (N.D. Cal. 2004), and "should be denied unless the matter has no logical connection to

the controversy at issue *and* may prejudice one or more of the parties to the suit."  *Hatamian v.

Advanced Micro Devices, Inc.*, No. 14-cv-00226, 2015 WL 511175, at *1 (N.D. Cal. Feb. 6,

2015).  "In the absence of such prejudice, courts have denied Rule 12(f) motions even though the

---

[4] Defendants also request to strike paragraph 101, but this appears to be a mistake as the language that they argue is "immaterial, impertinent, or scandalous" in paragraph 101 is contained in paragraph 102.  ECF No. 11 at 19.

United States District Court
Northern District of California

1  offending matter literally [was] within one or more of the categories set forth in Rule 12(f)." *Id.*

2  (quotations omitted).  Although the paragraphs that Defendants object to consist in large part of

3  Plaintiff's commentary about the case and have little bearing on Plaintiff's claims, Defendants

4  offer no substantive argument that Plaintiff's commentary about the removal of this case or his

5  opinion of Defendants' statute of limitations argument is prejudicial.  ECF No. 11 at 19.  Their

6  motion to strike is accordingly denied.  *See Hatamian*, 2015 WL 511175, at *1.

7      Defendants also appear to request that the Court consolidate Plaintiff's lawsuit filed in

8  Contra Costa Superior Court against the City on April 8, 2025, with this action.  ECF No. 11 at

9  18-19 (requesting that the Court exercise supplemental jurisdiction over all related state law

10  claims and cases and explaining that "consolidating the two cases in this Court would serve

11  judicial economy").  Plaintiff's state-court case against the City has been dismissed.  Defendants

12  cite no authority—and the Court is aware of none—that would allow it to consolidate a state court

13  case with a federal action, let alone a state court case that has been dismissed.  *See Or. Egg*

14  *Producers v. Andrew*, 458 F.2d 382, 383 (9th Cir. 1972) ("Rule 42 applies to cases that are

15  properly before the same court."); *Watkins v. County. of Los Angeles California*, No. CV 22-

16  02167, 2024 WL 3915206, at *1 (C.D. Cal. May 29, 2024) ("[T]his Court has no jurisdiction over

17  state court cases and cannot consolidate such actions with a federal action.").  Defendants' request

18  for consolidation is denied.

19  **V.      DEFENDANTS' 12(B)(6) MOTION TO DISMISS**

20      Defendants move to dismiss Plaintiff's FAC under Federal Rule of Civil Procedure

21  12(b)(6).  To survive a 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual

22  matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*,

23  556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A

24  claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

25  the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  For purposes

26  of a 12(b)(6) motion, courts accept all well-pleaded facts as true and construe the complaint in

27  favor of the non-moving party.  *See Twombly*, 550 U.S. at 555-57.  A court's review under Rule

28  12(b)(6) is generally limited to the contents of a complaint, materials incorporated by reference in

United States District Court
Northern District of California

1    a complaint, and materials subject to judicial notice.  *See Khoja v. Orexigen Therapeutics, Inc.*,

2    899 F.3d 988, 998 (9th Cir. 2018).  Where a plaintiff is proceeding pro se, as Plaintiff is here,

3    pleadings must be construed liberally and leave to amend must be given unless the pleading

4    deficiency cannot be cured.  *Lopez v. Smith*, 203 F.3d 1122, 1130-31 (9th Cir. 2000).

   **A.    The Timeliness of Plaintiff's Federal Claims**

6        Defendants argue that Plaintiff's federal claims are time-barred as Section 1983 claims

7    have a two-year statute of limitations, and Plaintiff has not pled facts to support delayed discovery

8    of the violations or tolling of the limitations period.  Plaintiff brings two causes of action under

9    Section 1983.  The first cause of action is brought against the officer Defendants for their conduct

10   on April 16, 2019, alleging that the officers used excessive force and entered Plaintiff's home

11   without a warrant in violation of the Fourth and Fourteenth Amendments.  FAC ¶¶ 17-29.  The

12   second is alleged against the City of Brentwood based a municipal liability theory grounded on the

13   City's purported "policy and longstanding custom of permitting warrantless entries and excessive

14   force in non-emergency situations" and concealment of police records.  *Id.* ¶¶ 34, 38.  Plaintiff

15   alleges that equitable tolling is appropriate here because, after the April 2019 incident, he

16   experienced severe "psychological impairments" that made him "unable to view the police report

17   or surveillance footage" and "unable to consult legal counsel or initiate litigation."  *Id.* ¶¶ 10, 12.

18   He recovered sufficiently by December 2024, reviewed the police report and surveillance footage

19   for the first time in December 2024, and decided to sue.  *Id.* ¶ 13.  He requests that the statute of

20   limitations be tolled for the period between April 2019 and December 2024 when he was

21   experiencing severe psychological distress.

22        "A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the

23   applicable statute of limitations only when 'the running of the statute is apparent on the face of the

24   complaint.'"  *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir.

25   2010) (quoting *Huynh v. Chase Manhattan Bank,* 465 F.3d 992, 997 (9th Cir. 2006)).  "[A]

26   complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of

27   facts that would establish the timeliness of the claim."  *Supermail Cargo, Inc. v. United States,* 68

28   F.3d 1204, 1207 (9th Cir. 1995).  While the running of the statute of limitations is an affirmative

1    defense, the "burden of alleging facts which would give rise to tolling falls upon the plaintiff."

2    *Hinton v. Pac. Enters.*, 5 F.3d 391, 395 (9th Cir. 1993).

3    There is no universal statute of limitations for Section 1983 claims. *See Owens v. Okure*,

4    488 U.S. 235, 239 (1989). Instead, 42 U.S.C. Section 1988 provides that the most analogous

5    state-law statute of limitation applies, if it is not otherwise inconsistent with federal law. *See id.*

6    To resolve the uncertainty of what state-law cause of action is most analogous to Section 1983

7    actions, the Supreme Court ruled that the forum state's general or residual "personal injury statute

8    of limitations should be applied to all § 1983 claims." *Id.* at 241. California's statute of

9    limitations for personal injury claims is two years. Cal. Civ. P. Code § 335.1; *Jones v. Blanas*,

10    393 F.3d 918, 927 (9th Cir. 2004). Thus, there is a two-year statute of limitations for Plaintiff's

11    Section 1983 claims. *Doe #1 M.L. v. San Bernardino Sheriff Dept.*, 753 F. Supp. 3d 1024, 1028

12    (C.D. Cal. 2024) ("[T]he statute of limitations for a Section 1983 or Section 1985 claim brought in

13    California is two years.").

14    Even where a statute of limitations may jeopardize the viability of a claim, tolling may

15    stop the clock on that limitations period. The forum state's law "regarding tolling, including

16    equitable tolling," applies to Section 1983 claims. *Blanas*, 393 F.3d at 927. As there are two

17    relevant types of tolling under California law, one grounded in common law, and the other in

18    statutory law, the Court addresses each in turn.

19    ### 1. Equitable Tolling Under California Law

20    Plaintiff characterizes his request that the two-year statute of limitations be tolled as one

21    for "equitable tolling." FAC ¶¶ 7-8. California's equitable tolling "doctrine applies when an

22    injured person has several legal remedies and, reasonably and in good faith, pursues one" rather

23    than seeking "redress" in multiple forums simultaneously. *McDonald v. Antelope Valley Cmty.*

24    *Coll. Dis.*, 45 Cal. 4th 88, 100 (2008) (citation modified). "By alleviating the fear of claim

25    forfeiture, [the doctrine] affords grievants the opportunity to pursue informal remedies, a process

26    we have repeatedly encouraged." *Id.* Under California law, equitable tolling is appropriate upon a

27    showing of "(1) timely notice of the claim to the defendant, (2) lack of prejudice to the defendant,

28    and (3) reasonable and good faith conduct by the claimant." *San Pablo Bay Pipeline Co., LLC v.*

*United States District Court*
*Northern District of California*

*Pub. Utilities Com.*, 243 Cal. App. 4th 295, 316 (2015) (citing *McDonald*, 45 Cal. 4th at 102).

California's equitable tolling doctrine is inapplicable here.  *See* ECF No. 11 at 10-11.  Plaintiff

does not allege that he had "several legal remedies" and pursued others only to resort to filing this

lawsuit when the other remedies were exhausted.  *McDonald*, 45 Cal. 4th at 100.  The first and

second elements are accordingly not satisfied.  Plaintiff first sued the City of Brentwood on April

8, 2025, in Contra Costa Superior Court and filed the instant lawsuit one day later.  Plaintiff did

not initiate any sort of claim against Defendants during the two-year statutory period or otherwise

put them on notice that he might later sue them for the April 2019 incident.  Because Plaintiff did

not provide "timely notice of the claim" to Defendants during the statutory period such that

Defendants would not be prejudiced by the delay in filing the claim, the Court agrees with

Defendants that equitable tolling is unavailable here.  *San Pablo Bay Pipeline,* 243 Cal. App. 4th

at 316.

### 2. Tolling Pursuant to California Code of Civil Procedure Section 352(a)

Plaintiff's request for tolling fits better into the framework of tolling under California Code

of Civil Procedure Section 352(a) for mental incapacity.

Section 352(a) provides that if a person who "at the time the cause of action accrued…[is]

lacking the legal capacity to make decisions, the time of the disability is not part of the time

limited for the commencement of the action."  Cal. Civ. Proc. Code § 352(a).  "To invoke tolling

under Section 352(a), a plaintiff must show that he was 'incapable of caring for [his] property or

transacting business or understanding the nature or effects of [his] acts.'"  *Avery v. Arreola*, No.

22-cv-08940, 2023 WL 7026938, at *3 (N.D. Cal. Oct. 24, 2023) (quoting *Estate of Stern v.

Tuscan Retreat, Inc.*, 725 F. App'x 518, 521 (9th Cir. 2018)); *see Hsu v. Mt. Zion Hospital*, 259

Cal. App. 2d 562, 571-72 (1968).  Someone who has been adjudicated mentally ill or has been

hospitalized for mental illness may be "incapable of caring for his property or transacting

business," but this is not dispositive.  *Hsu*, 259 Cal. App. 2d at 571-72; *see* Avery, 2023 WL

7026938, at *3.  Plaintiff must allege facts to plausibly show that his mental incapacity 1) existed

"at the time the cause of action accrued" and 2) was of such severity that he was "incapable of

caring for his property or transacting business, or understanding the nature or effects of his acts"

1    for the duration of the tolled period. Cal. Civ. Proc. Code § 352(a); *Hsu*, 259 Cal. App. 2d at 571.

2          Defendants argue that Plaintiff's "complete lack of medical records, declarations, or

3    corroboration" undercuts his claim that he was severely mentally incapacitated. ECF No. 14 at 3.

4    This is beside the point. At this stage in the litigation, the Court accepts Plaintiff's non-conclusory

5    factual allegations as true.

6          Plaintiff alleges that the "traumatic and unlawful police intrusion [in April 2019] severely

7    impacted [his] mental health and ability to function" such that he lost his job by May 2019, was

8    hospitalized by November 2019, and entered in-patient psychiatric treatment in January 2020.

9    FAC ¶ 5. Plaintiff does not literally "allege that he was incapacitated at the time the claims

10   accrued…but…that his mental incapacity came on at some unspecified point *after* the incident"

11   due to the trauma he experienced during the April 2019 incident. *Avery*, 2023 WL 7026938, at *3

12   (quotations and citations omitted). Though the text of Section 352(a) states that the incapacity

13   must exist "at the time" of the cause of action, California courts interpret this as encompassing

14   situations where the incapacity is caused by the defendant's wrongful act and do not require the

15   incapacity to preexist the cause of action. Cal. Civ. Proc. Code § 352(a); *see Feeley v. S. Pac.*

16   *Transportation Co.*, 234 Cal. App. 3d 949, 952 (1991) ("The tolling provision applies even though

17   the plaintiff's insanity is caused by the wrongful act of the defendant, and the tolling continues

18   until the plaintiff is restored to sanity."). Plaintiff's allegations that the incident caused his mental

19   incapacity and his psychological distress began shortly after the incident are sufficient to satisfy

20   the "at the time the cause of action accrued" requirement of Section 352(a). *See Feeley*, 234 Cal.

21   App. 3 at 952; FAC ¶ 9.

22          In addition to alleging that he was incapacitated at the time his claims accrued or as an

23   immediate result of defendant's acts, Plaintiff must allege facts to plausibly support his claim that

24   he was "incapable of caring for his property or transacting business, or understanding the nature or

25   effects of his acts" for the duration of the tolling period. *Hsu*, 259 Cal. App. 2d at 571 (citing

26   *Pearl v. Pearl*, 177 Cal. 303, 307 (1918)). He alleges that during the five-year period after April

27   2019, he suffered from "repeated trauma-related episodes, including flashbacks, panic, sleep

28   disturbances, and dissociation," and experienced "significant behavioral and cognitive disruption,

including hypervigilance, loss of basic personal security, and inability to sleep or feel safe in his own home." FAC ¶¶ 10-11. Due to his "continuing psychological incapacity" during the five years, he was "unable to view the police report or surveillance footage without suffering emotional breakdowns" and "unable to consult legal counsel or initiate litigation." *Id.* ¶¶ 10-12. Plaintiff alleges that although he was working over sixty hours per week before the April 2019 incident, he did not work in 2020 while he was in treatment, attempted to return to work in 2021 and only worked 1,054 hours that year, and did not work at all in 2022 or 2023. *Id.* ¶ 5. He does not allege whether he worked in 2024.

"The standard for pleading continuous lack of capacity under section 352(a) is high." *Bamforth v. Facebook, Inc.,* No. 20-cv-09483, 2021 WL 4133753, at *6 (N.D. Cal. Sept. 10, 2021), *aff'd Bamforth v. Facebook, Inc.*, No. 21-16681, 2023 WL 5925982 (9th Cir. Sept. 12, 2023). At this stage of litigation, the Court accepts Plaintiff's factual allegations as true and construes them in his favor. But even under this standard, Plaintiff's allegations are insufficient to plausibly support that he lacked the capacity to care for his property, make decisions, or understand the nature of his acts for the entire five-year period. Plaintiff alleges that, after the April 2019 incident, he experienced "hypervigilance, loss of basic personal security, and inability to sleep or feel safe in his own home." FAC ¶ 11. The Court credits these allegations as true and is sympathetic to Plaintiff's psychological distress. But Plaintiff's hypervigilance and inability to feel safe in his home do not show that he lacked an understanding of his actions and could not care for his property or belongings. *See Hsu*, 259 Cal. App. 2d at 571; *Avery*, 2023 WL 7026938, at *3 (finding that plaintiff's allegations of "despondency, severe depression, and PTSD" did "not meet the standard for incapacity under Section 352," as those conditions were "not the same as being incapable of caring for his property or transacting business or understanding the nature or effects of his acts") (quotations omitted). Similarly, that Plaintiff experienced "trauma-related episodes, including flashbacks, panic, sleep disturbance, and dissociation" does not support that he was incapacitated continuously rather than during acute episodes of panic and dissociation. *Id.* ¶ 10; *see Est. of Stern*, 725 F. App'x at 522-23.

Notably, Plaintiff alleges that he worked 1,054 hours in 2021. FAC ¶ 5. His allegation

that he worked in 2021 suggests that he was able to follow a schedule, complete assignments, and interact with coworkers or supervisors.  Tolling under Section 352 only lasts as long as an individual is incapacitated.  *See Est. of Stern*, 725 F. App'x at 522 ("[I]ncapacity must exist at the time the claims accrue, and tolling lasts only until the plaintiff regains capacity.").  That Plaintiff returned to work in 2021 suggests that, to the extent that he did not have capacity in 2019 and 2020, he regained capacity for at least part of 2021.  Absent factual allegations explaining how Plaintiff had the capacity to work (albeit part time) but not the capacity to care for his property, transact business, or understand his actions, the Court finds Plaintiff's allegations of psychological harm insufficient to meet the high standard for continuous incapacity under Section 352.  *See Hsu*, 93 Cal. App. 4th at 101.

*Hsu* establishes that "the basic question" under Section 352 "is whether the allegedly [incapacitated] plaintiff is sufficiently aware of the nature or effects of his acts to be able to comprehend such business transactions as the hiring of an attorney and the instigation of a legal action." 93 Cal. App. 4th at 101.  Plaintiff alleges that he did not hire counsel or initiate litigation before December 2024 because he was psychologically unable to review the police report and footage and did not understand or perceive that what he experienced in April 2019 violated the Constitution.  *See* FAC ¶¶ 11-13.  That he did not obtain counsel or initiate legal proceedings during this time because he was too psychologically impaired to review footage of the incident is not sufficient to show that, from April 2019 and December 2024, he was unable to make decisions, care for his property, or understand the nature or effects of his acts.  *See Flores v. Flores*, No. 14-cv-00577, 2015 WL 251855, at *3 (E.D. Cal. Jan. 20, 2015).

The Court accordingly finds that Plaintiff's allegations are insufficient to establish tolling under Section 352.  As Plaintiff alleged that he was able to return to work in 2021, the Court anticipates Plaintiff will have a difficult path alleging facts showing that he was "incapable of caring for his property or transacting business, or understanding the nature or effects of his acts" for all but two years between April 2019 and April 2025.  *Hsu*, 259 Cal. App. 2d at 571.  However, he may be able to do so, and it would be improper to dismiss his claims without prejudice "unless it appears beyond doubt that the plaintiff can prove no set of facts that would

14

establish the timeliness of the claim." *Supermail Cargo, Inc.,* 68 F.3d at 1206.[5]  Plaintiff's Section 1983 claims regarding the April 2019 incident are dismissed without prejudice, except as to his Section 1983 claim that the officer Defendants violated his rights under the Fourteenth Amendment, which, for the reasons discussed below, is dismissed with prejudice.

### 3.     The Delayed Discovery Rule

In the alternative to his argument that the statute of limitations should be tolled, Plaintiff argues that his claims did not accrue until late 2024, which was when "he became mentally capable of recognizing the legal implications of" the facts of his claim.  ECF No. 13 ¶ 4.

Although California tolling law applies, federal law applies when determining when a claim accrues.  *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999); *but see Bone v. City of Los Angeles*, 471 Fed. App'x 620, 622 (9th Cir. 2012) (applying California's delayed discovery rule, which "which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action") (quotations omitted).  "Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Maldonado v. Harris*, 370 F.3d 945, 955 (9th Cir. 2004) (quotations omitted).  "Thus, an action ordinarily accrues on the date of the injury." *Belanus v. Clark*, 796 F.3d 1021, 1025 (9th Cir. 2015) (quotations omitted).  For Section 1983 claims regarding Fourth Amendment violations, "the plaintiff is placed on constructive notice of the illegal conduct when the search and seizure takes place." *Klein v. City of Beverly Hills*, 865 F.3d 1276, 1279 (9th Cir. 2017).  "This principle holds true even where the person is unaware that the search and seizure is warrantless." *Braddy v. Drug Enf't Agency*, 464 F. Supp. 3d 1159, 1165 (C.D. Cal. 2020) (citing *Belanus,* 796 F.3d at 1026).

Plaintiff alleges that even though he was subjected to the allegedly unlawful search in April 2019, he did not "comprehend the constitutional and statutory injuries arising from the 2019 incident until late 2024, when he was finally able to review the police report and surveillance footage." ECF No. 13 at 4.  This argument is foreclosed by *Belanus*.  "[A] cause of action for

---

[5] Plaintiff argues that the statute of limitations should be tolled under the federal doctrine of equitable tolling.  *See* ECF No. 13 at 3.  But the Court must follow state tolling law and is not aware of authority that would allow it to apply federal equitable tolling principles here.

United States District Court
Northern District of California

illegal search and seizure accrues when the wrongful act occurs…even if the person does not know at that time that the search was" illegal. *Belanus*, 796 F.3d at 1026. That Plaintiff did not understand that he had been constitutionally injured until 2024 is insufficient to postpone the date of accrual. *See Venegas v. Wagner*, 704 F.2d 1144, 1146 (9th Cir. 1983) ("[W]here…illegal search and seizure is alleged, the conduct and asserted injury are discrete and complete upon occurrence, and the cause of action can reasonably be deemed to have accrued when the wrongful act occurs."); *Cabrera v. City of Huntington Park*, 159 F.3d 374, 381 (9th Cir. 1998). The Court accordingly finds that Plaintiff's Section 1983 causes of action regarding the April 2019 incident accrued on the date of the incident.

Plaintiff has not alleged sufficient facts to show that the statute of limitations for his Section 1983 claims regarding the April 2019 incident should be tolled under California law, and, under federal law, his argument that these claims did not accrue until December 2024 is unavailing. Plaintiff's Section 1983 claims regarding the April 2019 incident are therefore dismissed without prejudice as they were untimely when filed, though the Court notes that these claims are dismissed with prejudice to the extent they are grounded on the Fourteenth Amendment.

### B.    Plaintiff's Section 1983 Claim Against the Officer Defendants

Plaintiff's first cause of action, brought pursuant to 42 U.S.C. Section 1983 against the officer Defendants, asserts that they violated his rights under the Fourth and Fourteenth Amendment by entering Plaintiff's home without a warrant, consent, probable cause, or exigent circumstances, and handcuffing him while naked at gunpoint and with a police dog present. FAC ¶¶ 19, 24. Defendants argue that this conduct is covered by the Fourth Amendment, and Plaintiff cannot advance a Fourteenth Amendment substantive due process claim for government conduct covered by the Fourth Amendment. ECF No. 11 at 16.

"[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997); *see Graham v. Connor*, 490 U.S. 386, 395 (1989) ("Because the Fourth

United States District Court
Northern District of California

1  Amendment provides an explicit textual source of constitutional protection against this sort of

2  physically intrusive governmental conduct, that Amendment, not the more generalized notion of

3  'substantive due process,' must be the guide for analyzing these claims.").  Plaintiff's allegations

4  that the officer Defendants unlawfully entered his home and detained him are the type of

5  "intrusive governmental conduct" protected by the Fourth Amendment.  *Graham*, 490 U.S. at 395.

6  This claim thus must be analyzed "under the standard appropriate to" Fourth Amendment claims,

7  "not under the rubric of substantive due process." *Lanier*, 520 U.S. at 272 n.7; *see Cnty. of*

8  *Sacramento v. Lewis*, 523 U.S. 833, 843 (1998).  To the extent that Plaintiff's Section 1983 claim

9  is premised on an alleged violation of his Fourteenth Amendment rights, it is dismissed with

10  prejudice.

11      **C.**    ***Monell* Liability Claim**

12      Plaintiff alleges that the City of Brentwood is liable for the misconduct of its officers as it

13  "has maintained a policy and longstanding custom of permitting warrantless entries and excessive

14  force in non-emergency situations, frequently based on unsupported or demonstrably false

15  information provided by dispatch or officers" and because the officer Defendants' conduct was the

16  "direct and foreseeable result of the City's failure to adequately train" or discipline its officers.

17  FAC ¶¶ 33-34.  He further claims that the City had a practice of concealing records of police

18  misconduct, which was ratified by the former and current Chiefs of Police.  FAC ¶¶ 40, 41.

19  Defendants argue that Plaintiff does not allege facts to plausibly state a claim under any theory of

20  *Monell* liability.  ECF No. 11 at 17.

21      *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978),

22  "established that municipalities can be liable for infringement of constitutional rights, under

23  certain circumstances." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602 (9th Cir.

24  2019).  Although a municipality "may not be sued under § 1983 for an injury inflicted solely by its

25  employees or agents"—that is, it may not be sued under a *respondeat superior* theory—

26  municipalities "may be liable under § 1983 for constitutional injuries pursuant to (1) an official

27  policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a

28  decision or act by a final policymaker." *Id.* at 602-03; *Monell*, 436 U.S. at 694.  Plaintiffs must

show that "deliberate action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 400 (1997) (quoting *Monell*, 436 U.S. at 694). *Monell* claims must comply with the *Twombly*/*Iqbal* pleading standard and allege facts sufficient to plausibly state a claim for liability. *See AE v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012).

For the forgoing reasons, the Court agrees with Defendants that Plaintiff has not alleged sufficient facts to state a claim for *Monell* liability.

### 1. Warrantless Entry and Use of Excessive Force During the April 2019 Incident

The Court first addresses Plaintiff's claim that the City is liable for the alleged warrantless entry and use of excessive force during the April 2019 incident. As an initial matter, the Court finds that Plaintiff has alleged sufficient facts to plausibly show that his Fourth Amendment rights were violated.[6] *See Monell*, 436 U.S. at 694. At issue is whether Plaintiff has adequately alleged that the City's actions were "the moving force of the constitutional violation." *Id.* The Court construes the FAC as alleging two distinct theories of liability for this conduct: 1) that it was part of a "pervasive practice or custom" of City's police department and 2) that it was a result of inadequate training or a failure to discipline the officer Defendants. *Horton*, 915 F.3d at 602; FAC ¶¶ 32, 33, 37, 42.

### a. Practice or Custom

Plaintiff contends that the alleged constitutional violations that occurred on April 16, 2019, were a direct result of the City of Brentwood's "policy and longstanding custom of permitting warrantless entries and excessive force in non-emergency situations." FAC ¶ 34. Although Plaintiff uses the term "policy," he does not appear to allege that the City has a formal, written policy directing officers to conduct "warrantless entries and [use] excessive force in non-emergency situations," instead arguing that this conduct was pursuant to a widespread practice or custom. *Id.*; *see Monell*, 436 U.S. at 661. "Absent a formal governmental policy," a plaintiff "must show a 'longstanding practice or custom which constitutes the standard operating procedure

---

[6] Defendants do not challenge this.

of the local government entity.'" *Trevino v. Gates*, 99 F.3d 911, 919 (9th Cir. 1996) (quoting

*Gillette v. Delmore*, 979 F.2 1342, 1346 (9th Cir. 1992)). "Liability for improper custom may not

be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient

duration, frequency and consistency that the conduct has become a traditional method of carrying

out policy." *Id.* To show that a constitutional violation was part of a longstanding practice,

claimants generally must provide specific examples of similar incidents where the municipality's

employees engaged in the same or similar behavior. *See Hunter v. Cnty of Sacramento*, 652 F.3d

1255, 1233, 1234 n.8 (9th Cir. 2011); *Zaragoza v. Cnty. of Riverside*, No. EDCV 20-1381, 2021

WL 968967, at *4 (C.D. Cal. Feb. 18, 2021).

In support of his claim that the City of Brentwood police department has a "longstanding

custom" of warrantless entries and using excessive force, Plaintiff alleges that Defendant Officer

Rezentes was involved in two similar incidents involving the police dog, Marco, who was present

at the April 2019 incident. FAC ¶¶ 35-37. Plaintiff alleges that Office Rezentes deployed Marco

"on an unarmed woman hiding in an attic, causing a serious scalp injury" in January 2019 and that

Office Rezentes deployed Marco on another unarmed woman in February 2020. *Id.* The victim in

the February 2020 incident was seriously injured and sued the City, ultimately settling for

$967,000. *See* FAC ¶ 36; *Bates v. Rezentes*, 731 F. Supp. 1119 (N.D. Cal. 2024) (order granting

in part and denying in part defendant Officer Rezentes' motion for summary judgment).

Defendants argue that Plaintiff's allegations regarding these two incidents "do not establish

a pattern of similar unconstitutional conduct." ECF No. 11 at 17. They appear to be making two

distinct, though related, points: two corroborating incidents are not enough[7] and the two incidents

Plaintiff describes are too factually dissimilar to show a pattern.

The Court finds persuasive Defendants' first argument as to Plaintiff's warrantless entry

---

[7] Defendants note that the February 2020 incident that Plaintiff references "occurred ten months after" the April 2019 entry into Plaintiff's home. ECF No. 11 at 17. The fact that the February 2020 incident occurred *after* the April 2019 incident does not render it irrelevant to Plaintiff's municipal custom claim. ECF No. 11 at 17*; see Henry v. Cnty. of Shasta*, 132 F.3d 512, 518 (9th Cir. 1997), *opinion amended on denial of reh'g*, 137 F.3d 1372 (9th Cir. 1998) (affirming that "post-event evidence may be used to prove the existence of a municipal policy in effect at the time" of an alleged constitutional violation) (quotations omitted).

United States District Court
Northern District of California

1  and excessive force claims.  First, the FAC includes no allegations regarding the Brentwood

2  Police Departments' involvement in other warrantless entries.  This is plainly insufficient to

3  plausibly allege that the City has a "longstanding custom of permitting warrantless entries."  FAC

4  ¶ 32.  Next, Plaintiff describes two prior excessive force incidents involving Officer Rezentes and

5  Marco.  "The line between 'isolated or sporadic incidents' and 'persistent widespread conduct' is

6  not clearly delineated," but courts generally require allegations of "more than a few" similar

7  incidents to advance past the motion to dismiss stage.  *Lemus v. Cnty. of Merced*, No. 15-cv-

8  00359, 2016 WL 2930523, at *4 (E.D. Cal. May 19, 2016) (collecting cases), *aff'd*, 711 F. App'x

9  859 (9th Cir. 2017).  The Ninth Circuit, affirming a district court's directed verdict, has held that

10 proof of two prior unconstitutional raids by the Los Angeles County Sheriff's Special

11 Enforcement Bureau, "standing alone," did "not support a finding" that there was a county "policy

12 of harassment or of nonintervention."  *Meehan v. County of Los Angeles*, 856 F.2d 102, 107 (9th

13 Cir. 1988).  While *Meehan* does not control at the pleading stage, courts regularly require

14 allegations of multiple other incidents "factually pertinent to the [case] at hand" to survive a

15 motion to dismiss.  *McCoy v. City of Vallejo*, No. 19-cv-001191, 2020 WL 374356, at *4 (E.D.

16 Cal. Jan. 23, 2020) (finding that plaintiff's allegations were sufficient to survive a 12(b)(6) motion

17 to dismiss where plaintiff had alleged that the municipality's officers had been involved in six

18 incidents involving deadly officer shootings); *Bagley v. City of Sunnyvale*, No.16-cv-02250, 2017

19 WL 5068567, at *5 (N.D. Cal. Nov. 3, 2017) (finding allegations of two other incidents

20 "insufficient to support a claim for municipal liability"); *see also Nelson v. City of Los Angeles*,

21 No. CV 11-5407, 2015 WL 1931714, at *10-11 (C.D. Cal. Apr. 28, 2015).  Here, as in *Bagley*,

22 Plaintiff's allegations of two other incidents involving excessive force "are insufficient to support

23 a claim for municipal liability" based on a "longstanding practice or custom."  2017 WL 5068567,

24 at *5; *Trevino*, 99 F.3d at 919.

25      Defendants also argue that Plaintiff's *Monell* claims fail because the two other incidents

26 involving Officer Rezentes and Marco are factually dissimilar to the incident here.  ECF No. 11 at

27 17.  While that is true to the extent Plaintiff alleges that the City has a practice of conducting

28 warrantless entries (as neither of the other incidents involved warrantless entries), the Court

1    disagrees that the incidents are too dissimilar to support to Plaintiff's claim that the City has a

2    custom of using "excessive force in non-emergency situations."  FAC ¶ 34; *see Connick v.*

3    *Thompson*, 563 U.S. 51, 62 (2011) (requiring a "pattern of similar constitutional violations" to

4    support *Monell* liability); *Bagos v. Vallego*, No. 20-cv-00185, 2020 WL 6043949, at *5 (E.D. Cal.

5    Oct. 13, 2020).  The January 2019 and February 2020 incidents both involved Marco being

6    deployed on unarmed individuals who had surrendered or were in hiding.  *Id.* ¶¶ 35, 36.  In those

7    cases, Marco bit and seriously wounded the two individuals, whereas here Plaintiff only alleges

8    that the dog was present and barking.  *See* FAC ¶ 1.  But exact factual similarity is not required at

9    this stage.  *See Ochoa v. City of San Jose*, No. 21-cv-02456, 2021 WL 7627630, at *6 (N.D. Cal.

10   Nov. 17, 2021).  Construing Plaintiff's allegations in the light most favorable to him, Plaintiff has

11   alleged that the officer Defendants handcuffing him at gunpoint with a barking German Shepard

12   present constituted excessive force.  *See* FAC ¶ 1.  Plaintiff's allegations regarding two other

13   excessive force incidents involving the same officer and same dog are of sufficient categorical

14   similarity to support Plaintiff's claim that the City had a practice or custom of using K-9s in an

15   excessively forceful manner in non-emergency situations.  *See Ochoa*, 2021 WL 7627630, at *6

16   (dismissing defendants' arguments regarding factual dissimilarities as "too granular for the

17   pleading stage"); *McCoy*, 2020 WL 374356, at *4 (explaining that "use of force incidents"

18   involving "different circumstances" than the operative incident could be sufficiently "factually

19   pertinent" to support a *Monell* claim at the motion to dismiss stage) (citing *Breen v. City of*

20   *Concord*, No. 19-cv-05622, ECF No. 19 (N.D. Cal. Dec. 10, 2019)).

21          Additional allegations of incidents involving similar uses of excessive force, as well as

22   allegations of similar incidents involving warrantless entries, may be sufficient to state a claim for

23   *Monell* liability under this theory.  *See Zaragoza*, 2021 WL 968967, at *4.  As Plaintiff may be

24   able to amend his FAC to state a claim, his *Monell* liability claim based on the City's custom or

25   practice is dismissed without prejudice.

26                          **b.    Failure to Adequately Train or Discipline**

27          Plaintiff claims that the officer Defendants' alleged warrantless entry and use of excessive

28   force during the April 2019 incident were the "direct and foreseeable result of the City's failure to

United States District Court
Northern District of California

adequately train, supervise, and discipline its officers." FAC ¶ 33; *see id.* ¶ 42 ("The City's failure to remove or constrain officers with known misconduct histories…enable the unconstitutional entry into Plaintiff's home and the excessive, degrading detention that followed.").

"Failure to train an employee who has caused a constitutional violation can be the basis for § 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the employee comes into contact." *Long v. City of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006); *see City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). The same is true of the "failure to investigate and discipline employees in the face of widespread constitutional violations." *Hunter*, 652 F.3d at 1234 n.8. The "deliberate indifference" standard is met when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 109 U.S. at 390. "Only where a failure to train reflects a deliberate or conscious choice by a municipality…can a city be liable for such a failure under § 1983. *Id.* at 389 (quotations omitted). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train" because, "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 563 U.S. at 62 (quoting *Board of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)).

As discussed above, Plaintiff's allegations of two other incidents of excessive force involving Officer Rezentes and Marco are insufficient to plausibly allege "[a] pattern of similar constitutional violations" necessary to state a failure-to-train or failure-to-discipline *Monell* claim. *Connick*, 563 U.S. at 62. Plaintiff's claim based on this theory is accordingly dismissed without prejudice.

A failure to discipline theory may also fit into the ratification framework of *Monell* liability. *See Rabinovitz v. City of Los Angeles*, 287 F. Supp. 3d 933, 967 (C.D. Cal. 2018). Plaintiff alleges that "former Chief Hansen and current Chief Herbert…directly engaged in or ratified these unlawful policies." FAC ¶ 41. If "these unlawful policies" refers to alleged

1  warrantless entry and use of excessive force, Plaintiff may be claiming that the City is liable for

2  this conduct because it was ratified by the Chiefs of Police.  *Id.*  To the extent Plaintiff is

3  advancing this claim, this claim fails as he has not provided more than conclusory allegations that

4  the Chiefs of Police "approved" the officer Defendants' actions "and the basis for" their actions.

5  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).  Plaintiff may amend his complaint to

6  include facts to support this ratification theory of liability.

### 2.    Withholding of Records

8         In addition to alleging that the City is liable for the warrantless entry and excessive force of

9  the April 2019 incident, Plaintiff claims that the City is liable for withholding police records.

10  FAC ¶¶ 38, 40, 41.  Plaintiff appears to allege that the City is liable for this particular conduct

11  under a practice or custom theory and under a ratification theory.  *Id.*  This claim is dismissed

12  because Plaintiff has not alleged how this conduct violated his constitutional rights.

13         Plaintiff alleges that after the April 2019 incident:

14         [T]he Brentwood Police Department refused to voluntarily release the
       incident report.  Plaintiff's father was forced to submit a formal
15       California Public Records Act (CPRA) request.  Then-Chief of Police
       Thomas Hansen denied the request until legally compelled to disclose
16       the report—illustrating a municipal practice of obstructing access to
       police records.

18  FAC ¶ 38.  Plaintiff further alleges that in April 2025, he "submitted a CPRA request seeking

19  records of sustained misconduct involving" the officer Defendants.  *Id.* ¶ 39.  The Brentwood

20  Police Department, "through Records Supervisor Sonia Cardinale, acting on behalf of Chief Tim

21  Herbert—responded in writing that it had 'no responsive records for Officer Rezentes."  *Id.* ¶ 40.

22  Subsequently, "under legal pressure, the City reversed its position and selectively disclosed partial

23  records and photographs related" to Officer Rezentes's deployment of Marco, "alongside an

24  excessive volume of irrelevant material."  *Id.*  Plaintiff contends that this conduct "evidences a

25  deliberate policy of concealment ratified by municipal leadership."  *Id.*

26         At most, Plaintiff's allegations support that the Brentwood Police Department made it

27  difficult for him and his father to obtain police records.  He does not identify how this amounted to

28  a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws"

necessary to state a claim under Section 1983.  42 U.S.C. § 1983; *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008).  To the extent Plaintiff is alleging that the delay in releasing records was part of a conspiracy to cover up the officer Defendants' unconstitutional conduct, a "'cover up' theory of section 1983 liability is only viable where the cover-up itself deprives a plaintiff of constitutional rights." *Johnston v. Cnty. of Sonoma,* No. C 10-03592, 2011 WL 855934, at *3 (N.D. Cal. Mar. 9, 2011).  And a "claim for a cover-up is premature when the plaintiff's action seeking redress for the underlying violations remains pending," as is the case here.  *Bernier v. Rodriguez*, No. 18-cv-1131, 2022 WL 16804821, at *11 (E.D. Cal. Nov. 8, 2022) (quotations omitted).

Plaintiff's claim that the City is liable for the concealment of police records is accordingly dismissed without prejudice.  If Plaintiff chooses to amend this claim, he must allege what constitutional right he believes he was denied and nonconclusory facts supporting a theory of *Monell* liability.

### D.    The California Government Claims Act

In addition to his federal claims, Plaintiff asserts state-law claims against Defendants for violation of the Bane Act (California Civil Code Section 52.1) and for common law trespass.  FAC at 1.  Defendants argue that both claims are barred because Plaintiff did not first present his claims to the City of Brentwood.  ECF No. 11 at 13.

The California Government Claims Act (GCA) requires plaintiffs to timely file claims with a public entity before suing the entity or its employees.  *See Willis v. City of Carlsbad*, 48 Cal. App. 5th 1104, 1118 (2020).  The claim presentation requirement applies to "all claims for money or damages against local public entities," subject to an enumerated list of exceptions.  Cal. Gov. Code § 905.  "Claims for personal injury must be presented not later than six months after the accrual of the cause of action, and claims relating to any other cause of action must be filed within one year of the accrual of the cause of action."  *California Rest. Mgmt. Sys. v. City of San Diego*, 195 Cal. App. 4th 1581, 1591 (2011).  "Timely claim presentation is not merely a procedural requirement, but is a condition precedent to the claimant's ability to maintain an action against the public entity."  *Id*.  "The claimant bears the burden of ensuring that the claim is presented to the appropriate public entity," and the claimant must "allege compliance" with the GCA's

United States District Court
Northern District of California

"procedural requirements in the complaint." *DiCampli-Mintz v. Cnty. of Santa Clara*, 55 Cal. 4th 983, 991 (2012); *Progressive Sols., Inc. v. Stanley*, No. 16-cv-04805, 2017 WL 8294287, at *5 (N.D. Cal. Dec. 12, 2017).

Plaintiff does not allege that he presented his state law claims to the City of Brentwood prior to commencing this action. He instead argues that he was not required to do so as he is only seeking declaratory and injunctive relief under the Bane Act and for common-law trespass, and thus the GCA does not apply. ECF No. 13 at 5; *see* FAC as 12-14 (seeking declaratory and injunctive relief as well as attorneys' fees for his state law claims). Defendants argue that "[a]s far as defense counsel is aware, California law requires a timely government claim before suing a public entity for tort liability—even if equitable relief is sought." ECF No. 14 at 3.

Contrary to Defendants' position, there is a "general rule that the claims statutes do not apply to nonpecuniary actions, such as those seeking injunctive, specific or declaratory relief." *Gatto v. County of Sonoma*, 98 Cal. App. 4th 744, 761 (2002). In *Minsky v. City of Los Angeles*, the California Supreme Court held:

> The uniform claims presentation procedure of section 905…applies only to claims for "money or damages." Even as to local public entities ... the coverage of the…general claims statute is not universal. Like nearly all the supplanted claims statutes, it applies only to claims for money or damages.

11 Cal. 3d 113, 120 (1974) (quotations omitted); *see Stronghold Engineering Inc. v. City of Monterey*, 96 Cal. App. 5th 1203, 1208 (2023) ("The claim presentation requirement does not apply to 'non-pecuniary actions, such as those seeking injunctive, specific, or declaratory relief.'") (quoting *Minsky*, 11 Cal. 3d at 121). The Northern District has found that "*Minsky* and its progeny" establish that the claims requirement of the GCA is not applicable to claims for injunctive or declaratory relief. *Freeman v. Rohnert Park Dep't of Pub. Safety*, No. 18-cv-07661, 2019 WL 4082852, at *6 (N.D. Cal. Aug. 29, 2019); *see Khan v. San Francisco Hous. Auth.,* No. C 07-6209, 2008 WL 2024600, at *3 (N.D. Cal. May 8, 2008) (holding that the GCA "does not apply to actions in which the primary relief sought against the government is equitable in nature and any request for monetary damages is merely incidental").

1     Here, Plaintiff seeks "declaratory relief that Defendants violated Plaintiff's rights" under

2   the California and U.S. constitutions and that "the April 16, 2019 entry into Plaintiff's residence

3   by Defendants constituted unlawful trespass," and injunctive relief to "prevent similar future

4   conduct by Defendants."  FAC at 12, 14.  He specifies that he requests "such other and further

5   *non-monetary relief* as the Court deems just and proper."  *Id.* (emphasis added).  Although he also

6   requests attorneys' fees, this request is "incidental" to his request for declaratory and injunctive

7   relief and is not the primary relief he seeks.  *Khan*, 2008 WL 2024600, at *4.  Following *Minsky*,

8   the Court finds that as Plaintiff's state law claims are not primarily for "money or damages," he

9   was not required to first present his claims to the City of Brentwood and his claims are thus not

10   barred for failure to comply with the GCA.  11 Cal. 3d at 120.

11     Defendants' request that Plaintiff's state law claims be dismissed for failure to comply

12   with the GCA is accordingly denied.  Although Defendants argue that the deadlines for Plaintiff to

13   present his claims to the City of Brentwood under the GCA cannot be tolled, as the GCA does not

14   apply to Plaintiff's claims, Plaintiff is under no obligation to comply with these deadlines.  ECF

15   No. 11 at 14-15.  Defendants do not otherwise argue that Plaintiff's state law claims are barred by

16   the statutes of limitations for Bane Act and trespass claims, and the Court accordingly does not

17   address further whether these claims are time-barred.

18     **E.    Bain Act Claim**

19     Defendants lastly argue that Plaintiff has failed to state a claim under California's Bane

20   Act.  The Bane Act, at California Civil Code Section 52.1, prohibits interfering with another

21   individual's "exercise or enjoyment…of rights secured by the Constitution or laws of the United

22   States" or California "by threat, intimidation, or coercion."  "The elements of a Bane Act claim are

23   essentially identical to the elements of a § 1983 claim, with the added requirement that the

24   government official had a 'specific intent to violate' a constitutional right."  *Hughes v. Rodriguez*,

25   31 F.4th 1211, 1224 (9th Cir. 2022) (quoting *Reese v. Cnty. Of Sacramento*, 888 F.3d 1030, 1043

26   (9th Cir. 2018); *see Simmons v. Superior Court*, 7 Cal. App. 5th 1113, 1125 (2016) ("[T]he Bane

27   Act requires that the challenged conduct be intentional.").  The Bane Act "does not require the

28   'threat, intimidation or coercion' element of the claim to be transactionally independent from the

United States District Court
Northern District of California

26

United States District Court
Northern District of California

constitutional violation alleged." *Reese*, 888 F.3d at 1043 (quoting Cal. Civ. Code § 52.1)). "[T]he coercion inherent in a Fourth Amendment violation could support a Bane Act claim if the coercion occurred with 'specific intent to violate the arrestee's right to freedom from unreasonable seizure.'" *Sandoval v. Cnty. of Sonoma*, 912 F.3d 509, 519-20 (9th Cir. 2018) (quoting *Reese*, 888 F.3d at 1044 n.4).

Plaintiff's Bane Act claim is based on the same facts as his Fourth Amendment claim: he alleges Defendants entered his house "without a warrant, consent, or any lawful exigency," awoke him with a barking police dog and weapons pointed at him, and handcuffed him, naked, while they searched his home. FAC ¶¶ 47-49. He further alleges that "Defendants acted with specific intent to interfere with Plaintiff's constitutional rights." *Id.* ¶ 50. Defendants do not argue that Plaintiff has not alleged sufficient facts to state a claim for a Fourth Amendment violation, or that Plaintiffs failed to allege that Defendants acted intentionally. Instead, they argue that "the FAC contains no factual allegations that Defendants used threats, intimidation, or coercion *distinct from the underlying seizure itself.*" ECF No. 11 at 18 (emphasis added). They argue that as the only coercion was the coercion "inherent in the alleged constitutional violation," Plaintiff's Bane Act claim fails as a matter of law. *Id.* Their argument relies on *Shoyoye v. Cnty. of Los Angeles*, which held:

> [W]here coercion is inherent in the constitutional violation alleged…
> the statutory requirement of threats, intimidation, or coercion is not
> met. The statute requires a showing of coercion independent from the
> coercion inherent in the wrongful detention itself.

203 Cal. App. 4th 947, 959 (2012) (quotations omitted). But courts have rejected *Shoyoye* and established that a Bane Act claim does not "require threats or intimidation other than the underlying" Fourth Amendment violation. *S.R. Nehad v. Browder*, 929 F.3d 1125, 1142 n.15 (9th Cir. 2019); *see Reese*, 888 F.3d at 1043; *Cornell v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 766, 798-80 (2017), *as modified* (Nov. 17, 2017). That is, "[t]he elements of a Bane Act claim are essentially identical to the elements of a § 1983 claim, with the added requirement that the government official had a 'specific intent to violate' a constitutional right." *Hughes*, 31 F.4th at 1224 (quoting *Reese*, 888 F.3d at 1043).

United States District Court
Northern District of California

1    The Court accordingly rejects Defendants' argument that Plaintiff's Bane Act claim fails as

2   a matter of law because Plaintiff does not allege any "threats, intimidation, or coercion distinct

3   from the underlying seizure itself."  ECF No. 11 at 18.  He is not required to do so.  Plaintiff has

4   alleged that Defendants violated his Fourth Amendment rights and that they did so with the

5   "specific intent to interfere with Plaintiff's constitutional rights."  FAC ¶ 50.  This is sufficient.

6   *Hughes*, 31 F.4th at 1223*; see Langham v. City of Union City*, No. 22-cv-06284, 2023 WL

7   11868201, at *7 (N.D. Cal. Nov. 27, 2023) (finding that plaintiff had plausibly alleged a Bane Act

8   claim where he alleged that the individual defendants' violation of his Fourth Amendment rights

9   was "done with the specific intent to deprive Plaintiffs [sic] of their constitutional rights").

10   Defendants' request that the Court dismiss Plaintiff's Bane Act claim is accordingly denied.

11   **VI.    CONCLUSION**

12    For the foregoing reasons, Defendants' motion to dismiss the FAC is denied as to

13   Plaintiff's state law claims and granted as to Plaintiff's Section 1983 claims.  Plaintiff's

14   Section 1983 *Monell* liability claim and Section 1983 claim that the officer Defendants violated

15   his rights under the Fourth Amendment are dismissed without prejudice.  Plaintiff's Section 1983

16   claim that the officer Defendants violated his rights under the Fourteenth Amendment is dismissed

17   with prejudice.

18    Defendants' requests to strike portions of Plaintiff's FAC and to consolidate this action

19   with Plaintiff's prior state case is denied.  Defendants' motion to dismiss Plaintiff's original

20   complaint is denied as moot.  Plaintiff's request for entry of default against the officer Defendants

21   is denied.

22   //

23   //

24   //

25   //

26   //

27   //

28

Plaintiff's second amended complaint is due no later than September 29, 2025.  His amended complaint will entirely replace his prior complaints and so he must allege or re-allege all facts and claims that he wishes the Court to consider.  The Court encourages Plaintiff to refer to the Northern District's resources for pro se litigants, available online at: https://cand.uscourts.gov/pro-se-litigants/.

**IT IS SO ORDERED.**

Dated: September 8, 2025

LISA J. CISNEROS
United States Magistrate Judge